## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

GWENN A. S.,

                                Plaintiff,

            v.                                          Civil Action No.
                                                        1:20-CV-1168 (BKS/DEP)

KILOLO KIJAKAZI,[1] in her Official Capacity
As Acting Commissioner of the Social
Security Administration

                                Defendant.

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF N.E. NY        ROSE PUANANI LANDAU, ESQ.
40 New Street
Saratoga Springs, NY 12866

FOR DEFENDANT

SOCIAL SECURITY ADMIN.              RONALD W. MAKAWA, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

---

[1]     Plaintiff's complaint named Andrew M. Saul, in his official capacity as the Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi took office as the Acting Social Security Commissioner. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    <u>BACKGROUND</u>

Plaintiff was born in April of 1966, and is currently fifty-five years of age. She was forty-four years old at her alleged onset date of disability – October 16, 2010 – and fifty-one years old the time of her application for benefits in March of 2018. Plaintiff stands four feet and eleven inches in height, and weighed between approximately one hundred and seven and

one hundred and sixteen pounds at the relevant times.  Plaintiff lives in an apartment in Glens Falls, New York.

Plaintiff reported graduating from high school.  She has worked in the past as a video store manager, warehouse worker, assistant manager and machine technician at a dry cleaning business, medical product assembler, and kennel manager at an animal shelter.

Plaintiff alleges that she suffers from severe chronic obstructive pulmonary disorder ("COPD"), retropatellar pain syndrome, reflex sympathetic dystrophy ("RSD") in her right, non-dominant arm related to a dog bite, arthritis in her right wrist, and muscle spasms in her lower back. She has also alleged that she suffers from anxiety.  As is relevant to her applications, plaintiff treated for her impairments with Glens Falls Hospital, Irongate Family Practice, and Broad Street Medical Group.

Plaintiff has reported that she suffers from COPD, causing her to have trouble breathing with exertion or in response to exposure to perfumes, fumes, and extreme temperatures.  She has been hospitalized on multiple occasions due to pneumonia and exacerbations of COPD.  She has been using supplemental oxygen daily when needed since 2016, but she cannot take it with her outside of the house because she is not able to carry the heavy tanks and her insurance will not approve a lighter unit.  In

addition to her COPD, plaintiff alleges that she has pain in her wrists and arms that was diagnosed in 1994 but that she does not receive treatment for that.  She additionally alleges she has had knee pain since 1987, for which her treating physician assistant ("PA") has recommended knee replacements.  Plaintiff also reports chronic muscle spasms in her lower back.  She is able to cook for herself, but has other people come to do housework for her, take care of her dog, and help her with grocery shopping.  Plaintiff is a longstanding heavy smoker, reportedly smoking as much as two packs of cigarettes daily during portions of the relevant period.

II.   PROCEDURAL HISTORY

A.   Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on March 7, 2018.[2]  In support of her applications, she claimed to be disabled due to COPD, retropatellar pain syndrome, RSD, arthritis in her right wrist, and back spasms.

A hearing was conducted on July 31, 2019, by Administrative Law Judge ("ALJ") Mary Sparks, to address plaintiff's applications.  Following that hearing, ALJ Sparks issued an unfavorable decision on October 24,

---

[2]      As will be seen, for the purposes of her Title II application, her date last insured was December 31, 2012.

2019.  That opinion became a final determination of the agency on August 11, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Sparks applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period.  The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including, for the period prior to her date last insured, mild COPD and tobacco use disorder, and, for the period after the expiration of her insured status, COPD, tobacco use disorder, and moderate disc space narrowing at the L3-L4 and L4-L5 levels.  As part of her step two finding, ALJ Sparks found that plaintiff's anxiety and depressive disorders are not severe impairments, and that her allegations of wrist pain and knee pain are insufficient to establish the presence of medically determinable impairments related to those symptoms.

At step three, ALJ Sparks examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

5

plaintiff's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering Listings 1.04 and 3.02.

ALJ Sparks next surveyed the available record evidence and concluded that, prior to her date last insured, plaintiff retained the residual functional capacity ("RFC") to perform a range of light work,[3] as defined by the controlling regulations, with the following exceptions:

> [the claimant could] never climb ladders, ropes, or scaffolds; could no more than occasionally stoop, crouch, kneel, crawl, or climb ramps or stairs; could have no more than occasional exposure to extreme heat or cold; and should have avoided all exposure to irritants, such as fumes, odors, dust, gases, and poorly ventilated areas.

---

[3]    By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The ALJ further found that, subsequent to her date last insured, plaintiff retains the RFC to perform only a range of sedentary work,[4] as defined by the controlling regulations, with no more than occasional exposure to extreme cold and heat, and the need to avoid all exposure to irritants such as fumes, dust, gases, and poorly ventilated areas.

ALJ Sparks went on to step four to conclude that plaintiff is able to perform the demands of her past relevant work as a plastic hospital products assembler notwithstanding the limitations in the RFCs applicable both before and after her date last insured.  Proceeding to step five as an alternative finding made for the period predating the termination of plaintiff's insured status, the ALJ consulted a vocational expert regarding how plaintiff's limitation impacted the occupations she could perform with the range of light work specified above, and concluded based on the vocational expert's testimony that, for the period prior to her date last insured, plaintiff

---

[4]    By regulation, sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

remained able to perform other work, including as a photocopy machine operator, collator operator, and garment folder.  Based upon these findings, ALJ Sparks concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on September 23, 2020.[5]  In support of her challenge to the ALJ's determination, plaintiff argues various points, including that (1) the ALJ erred in failing to find that her RSD/wrist impairment and bilateral knee osteoarthritis are medically determinable impairments, (2) the ALJ should have found her anxiety disorder to be a severe impairment and failed to inquire about the reasons she did not seek treatment for that impairment before relying on the lack of treatment as a basis for finding it non-severe, (3) the ALJ improperly weighed the opinion from treating physician's assistant ("PA") Raju Sadal because she ignored the substantial evidence in the record that supports that opinion, (4) the ALJ erred in failing to make any specific finding regarding plaintiff's ability to sit throughout an eight-hour workday, and (5) the ALJ erred in failing to incorporate a need for absences into the RFC because such need is

---

[5]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

substantiated by the amount of occasions during which she required

extended treatment for exacerbations of her COPD.

Oral argument was conducted in this matter, by telephone, on

January 27, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to

suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

As an initial matter, I note that, although the ALJ's decision included RFC findings separately related to the periods from between December 16, 2010 and December 31, 2012, and January 1, 2013 to the date of the ALJ's decision, the record contains very little evidence related to the first period, and plaintiff's arguments mostly apply to the second period, given that they are primarily based either on impairments that are not documented in the record until after 2012, or based on opinion evidence that was rendered well after 2012.  The below analysis therefore generally focuses on whether the ALJ's post-date last insured RFC is supported by substantial evidence.  However, that fact notwithstanding, I have considered whether there was error in the totality of the ALJ's findings and recommend it be found that no error exists for the reasons that will be discussed below.

1.    The ALJ's Step Two Assessment

a.    Wrist and Knee Symptoms

Plaintiff first argues that the ALJ should have found that her wrist and knee symptoms constitute medically determinable impairments.  Dkt. No. 16, at 19-20.  Pursuant to the regulations, a medically determinable impairment "must 'result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and

13

laboratory diagnostic techniques' and 'must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms.'" *Allen o/b/o Allen v. Comm'r of Soc. Sec.*, 16-CV-1207, 2017 WL 6001830, at *3 (N.D.N.Y. Dec. 4, 2017) (Carter, M.J.).  In order to be considered a medically determinable impairment, the impairment "must be established by objective medical evidence from an acceptable medical source," and not solely by the plaintiff's "statement of symptoms, a diagnosis, or a medical opinion."  20 C.F.R. §§ 404.1521, 416.921.

Regarding plaintiff's alleged wrist symptoms, she testified at the hearing that she was diagnosed with RSD in 1994, following a dog bite that caused pain and cramping in both hands and arms, but acknowledged that she has not had any specific treatment for this alleged condition since that diagnosis.  Administrative Transcript ("AT") at 45-46.[6]  In February 2014, she presented to Irongate Family Practice to have disability paperwork completed, at which time she reported that, due to a previous right wrist fracture, she experiences pain when lifting more than ten pounds and carrying, and difficulty with fine manipulation with her right hand.  AT 288.  Treating physician Dr. Thomas Coppens observed that plaintiff had

---

[6]      The Administrative Transcript is found at Dkt. No. 13 and will be cited as "AT __."

decreased muscle strength in her right forearm with flexion against resistance due to pain, but her grip was fair.  AT 289.  Dr. Coppens did not include any diagnosis related to her wrist.  AT 289-90.

In November 2017, at an annual examination for Medicaid benefits, plaintiff reported she had been having right wrist pain and tenderness at the tendon on her thumb.  AT 299.  Treating PA Raju Sadal[7] observed that plaintiff had normal range of motion in the upper and lower extremities; he did not record any observations of limitations or pain related to her right wrist or hand.  AT 299-300.  Despite the lack of observations, PA Sadal assessed that plaintiff had right wrist pain, arthritis of the right wrist, wrist tenosynovitis, and RSD, for which it was noted she was prescribed meloxicam.  AT 300.  In March 2018, PA Sadal noted that plaintiff's wrist pain was chronic and that she should continue taking Tramadol for that condition, although there is no indication that plaintiff made any subjective reports of wrist pain or that PA Sadal observed any wrist abnormalities during this visit.  AT 312-13.

In May 2018, plaintiff reported chronic right wrist pain, and PA Sadal

---

[7]     Based on the date that plaintiff's applications for benefits were filed, her claims are subject to the "new" regulations related to evaluating medical and opinion evidence. Pursuant to these updated regulations, PAs are considered acceptable medical sources.  20 C.F.R. § 404.1502(a)(8).

observed that her right wrist was mildly tender to palpation but that otherwise the examination of her wrist was negative. AT 339-40. PA Sadal indicated that her right wrist pain seemed "benign" and was "likely secondary to overuse." AT 340.

At a consultative examination with Dr. Kautilya Puri on May 3, 2018, plaintiff reported a history of RSD and right wrist fracture. AT 324. During her examination, Dr. Puri observed that plaintiff had full range of motion in her shoulders, arms, and wrists, normal reflexes, strength, and sensation in her upper extremities, and intact hand and finger dexterity, although she had some give-way weakness with right grip strength due to local tenderness. AT 324-27.

In January 2019, plaintiff reported to PA Sadal that she had been unable to sleep due to severe pain, in part related to her RSD. AT 395-96. PA Sadal, however, did not note any observable abnormalities related to plaintiff's wrist and did not list any diagnoses related to her wrist. *Id*.

In sum, although there are some objective findings of tenderness or pain related to plaintiff's right wrist, those findings are insufficient to establish a medically determinable impairment. The record contains no objective imaging or other testing of plaintiff's wrist to corroborate her allegations of arthritis. There is no corroborating documentation that

plaintiff fractured her wrist or that such fracture is the cause of her ongoing symptoms.  There is also no documentation to substantiate the various diagnoses of RSD, which all appear to be based on plaintiff's report that she was diagnosed with that condition in the remote past.  Overall, nothing in the record suggests that the ALJ's conclusion regarding this impairment is not supported by substantial evidence.

Regarding her allegations of knee pain, in February 2014, plaintiff reported to Dr. Coppens that she sustained a left knee injury while she was in the military and, as a result, her left knee and hip cause her pain when standing for longer periods of time.  AT 288.  Dr. Coppens observed no effusion in plaintiff's left knee, increased pain with full flexion and extension, and good muscle strength in her lower extremities.  AT 289.

In May 2018, plaintiff reported experiencing pain in her bilateral knees with a remote injury to her left knee, and PA Sadal observed that she had bilateral knee pain with range of motion, crepitus, and full strength in her lower extremities.  AT 339-40.  PA Sadal assessed that plaintiff had "bilateral knee arthritis" and indicated that she should return in a week for a left knee injection.  AT 340.  However, there is no indication that plaintiff received that injection, or that she returned for any subsequent treatment of her knee.

In May 2018, Dr. Puri observed that plaintiff had a moderately "less than halfway" decreased squat and bilateral knee tenderness with palpation and movement, normal gait and normal reflexes, strength, and sensation in her lower extremities.  AT 325-27.

As with plaintiff's alleged wrist impairment, the evidence in the record does not substantiate that plaintiff has any specific medically determinable impairment in her left knee.  Notably, although PA Sadal assessed plaintiff with "bilateral knee arthritis," there is no objective imaging or other testing substantiating that plaintiff has arthritis, only a single observation of crepitus, and sparse notations of pain and/or tenderness.  The evidence, taken from only a handful of treatment notes over a span of nearly eight years, is simply insufficient to establish plaintiff's knee symptoms are a medically determinable impairment under the regulations.

In her decision, the ALJ found that these impairments were insufficiently established because (1) the objective medical record did not support plaintiff's allegations about RSD or provide any indication about how that diagnosis was reached, (2) allegations or observations of pain are not, in and of themselves, sufficient to establish a medically determinable impairment, and (3) plaintiff herself testified that the injuries producing the alleged symptoms occurred in the remote past with no subsequent

additional injury or treatment.[8]  AT 14.  I therefore recommend a finding that the ALJ sufficiently explained her finding related to these impairments to permit meaningful review and that those findings are supported by substantial evidence in the record.

In the alternative, even if the ALJ should have found either or both of these impairments to be medically determinable, and further should have found them to be severe – a finding which is doubtfully merited based on the scant evidence related to those impairments as shown by the discussion above – I would nonetheless recommend that any such error be found harmless.  The evidence does not document a level of symptoms or limitations imposing functional restrictions beyond those that are already accounted for by the ALJ's RFC.  Notably, Dr. Puri opined that plaintiff had no objective limitations in fine or gross motor activities and only mild limitations in relevant functions such as gripping, lifting weights, or squatting, and specifically did not find any major limitations related to plaintiff's gait or ability to ambulate after observing bilateral knee tenderness on palpation and full range of motion in the knees.  AT 327.  Dr. Coppens, who observed decreased muscle strength in plaintiff's right

---

[8]     I note that plaintiff did report to Dr. Puri that she suffered a right wrist fracture in 2012, but there is no evidence in the treatment records that appears to substantiate that report.  AT 324.

forearm, opined that she is limited to sedentary work due to her COPD, but did not state that there were any limitations related to a wrist impairment. Given that the ALJ limited plaintiff to a range of sedentary work during the period in which these alleged impairments are at all documented, the mild symptoms observed in the medical evidence would not have compelled a reasonable person to include additional limitations in the RFC determination.

b.    Anxiety

Plaintiff next argues that the ALJ should have found her medically determinable impairment of anxiety to be severe. Dkt. No. 16, at 20-21. Although plaintiff is correct that the standard for severity at step two of the sequential analysis is *de minimis*, I recommend a finding that, in accordance with the ALJ's opinion, she has not shown that her anxiety meets even that low threshold.

As was the case with respect to the other two impairments previously discussed, plaintiff mentioned her anxiety to a treating provider for the first time in February 2014, when she presented to have disability paperwork completed. AT 288. She reported that she cannot tolerate a lot of stress and that she cannot handle jobs that are fast paced or that deal with pressure or the public. *Id.* On examination, Dr. Coppens observed that

plaintiff had an anxious affect, and diagnosed plaintiff with a generalized anxiety disorder, opining that, "[b]ased on her state[d] issues with anxiety," this impairment rendered her unable to tolerate high stress environments unless her anxiety was controlled.  AT 289-90.  In June 2018, plaintiff reported that she would experience chest pain when she was anxious or had a panic attack, but PA Sadal did not note any observations of anxiety, or diagnoses or treatment for anxiety or panic attacks.  AT 342-43.  In January 2019, PA Sadal wrote under the "review of symptoms" section of the treatment note that plaintiff was anxious; however, he did not note that plaintiff appeared anxious in the examination section and did not include anxiety as a diagnosis in his assessment section.  AT 395-96.  There is no evidence that plaintiff sought or received any further treatment for her anxiety, not even from her primary care provider.

The ALJ found in her decision that plaintiff's anxiety disorder imposed only mild limitations in the areas of understanding, remembering and applying information, interacting with others, and adapting or managing oneself, and no limitation in the area of concentrating, persisting and maintaining pace.  AT 15-16.  In making these findings, the ALJ noted that plaintiff reported being able to prepare meals, use public transportation, grocery shop with physical assistance, pay bills, manage a savings

account, and follow spoken and written instructions. *Id.* She reported

caring for her disabled fiancée, spending time with others when they were

helping her with physical tasks, and being able to pay attention. *Id.* The

ALJ additionally noted that the objective medical evidence indicated that

her providers had not prescribed any medication despite her reports of

anxiety and panic attacks, and that most of her mental status examinations

did not reveal anxiety. AT 16-17. The ALJ also explicitly rejected the

opinion from Dr. Coppens, in large part because it was based on plaintiff's

unsupported subjective reports. *Id.*

Plaintiff argues that, rather than using the lack of any treatment for

this impairment as a basis for finding it non-severe, the ALJ should have

considered the reasons plaintiff failed to seek treatment, including the fact

that she cannot take her oxygen tank outside of her house and she has to

avoid respiratory irritants, both of which make it difficult for her to leave her

house to seek treatment. Plaintiff's argument is baseless for two reasons.

First, there is simply no basis for the ALJ to consider why plaintiff failed to

seek treatment, because the record shows that, even when plaintiff

reported anxiety to her providers on the few occasions that she did, they

did not prescribe any medical or therapeutic intervention. *See Haggas v.*

*Comm'r of Soc. Sec.*, 17-CV-0636, 2018 WL 4039374, at *4 (N.D.N.Y. May

7, 2018) (Carter, M.J.) (finding no error in the ALJ's conclusion that mental impairments were not severe where, "[a]lthough Plaintiff complained of anxiety and depression on occasion, she received no mental health treatment and no medical source provided work-related functional limitations associated with a mental impairment").  There is simply no indication that plaintiff's medical providers believed that she required any medical or therapeutic intervention.[9]  Second, plaintiff's last-ditch effort to explain that her physical condition prevented her from seeking treatment is not supported by any evidence in the record, and is contradicted by the fact that she otherwise sought treatment for her physical impairments when appropriate.

Because the ALJ provided appropriate reasons supported by substantial evidence for finding that plaintiff's anxiety disorder was not severe, I recommend that plaintiff's arguments on this issue be rejected.

### 2.    The ALJ's RFC Assessment and Weighing of the Opinion Evidence

---

[9]    As was discussed previously, Dr. Coppens opined that plaintiff is unable to tolerate high stress environments, while PA Sadal opined that plaintiff is incapable of even low stress work because of her anxiety.  AT 289-90, 369.  The ALJ explicitly rejected these opinions as being based on subjective reports that were not substantiated by the evidence, including the sources' own treatment of plaintiff.  AT 16.  Plaintiff has not generally challenged the weight afforded to these opinions or the ALJ's assessment of the persuasiveness of plaintiff's subjective reports.  To the extent that plaintiff does argue that the ALJ failed to appropriately weigh PA Sadal's opinion in general, such argument will be discussed in the following section of this report and recommendation.

a. PA Sadal's Opinion

Plaintiff's argument addressing this issue centers upon the ALJ's evaluation of the opinion from treating source PA Sadal.  Because plaintiff's application for benefits was filed in March of 2018, the amended regulations regarding the weighing of medical source opinion evidence apply to her claim.  Under those new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but will rather consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  The regulations require that an ALJ must articulate in his or her determination how persuasive he or she finds each of the medical opinions and explain how the ALJ considered the supportability and consistency of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of

24

examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion. 20 C.F.R. § 416.920c(c).

Plaintiff argues that the ALJ erred in finding that PA Sadal's opinion was unpersuasive, essentially pointing to evidence in the record that she asserts supports that opinion, and specifically his opined limitations for plaintiff being off-task twenty-five percent of the workday and standing or walking for less than two hours in a workday. Dkt. No. 16, at 22-24.

Plaintiff's arguments amount to little more than a request for this court to reweigh the evidence in a way that is more favorable to her. Such an action would be inappropriate and contrary to clearly established law. *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) (Carter, M.J.) (noting that it is not enough for the plaintiff to point to evidence that supports his or her position because it is not the function of the court to reweigh the evidence or determine whether the claimant is disabled, but instead the court must uphold the ALJ's decision so long as it applies the relevant law and there is substantial evidence in the record to support it). Although there is undeniably some

evidence which supports the existence of limitations in this case, substantial evidence supports the ALJ's finding that plaintiff is not limited to the extent opined by PA Sadal.

PA Sadal opined that plaintiff is significantly limited in almost every respect, such that she can sit for less than two hours, stand or walk for less than two hours, requires the ability to shift positions and take unscheduled breaks often, requires the ability to elevate her legs for half of the workday, can rarely lift even less than ten pounds, never perform postural maneuvers, almost never use her right arm and use her left arm only twenty-five percent of the workday, is incapable of even low stress work, and requires the ability to be off-task twenty-five percent or more of the workday.  AT 367-69.

In finding PA Sadal's opinion unpersuasive, the ALJ concluded that it is not supported by the record, that it appears to be primarily based on plaintiff's subjective reports of pain and past diagnoses that are not corroborated by objective evidence, that it is unsupported by objective studies, and that it is not supported by his own treatment notes, which fail to document any need for leg elevation or restrictions in sitting.  AT 23. The ALJ also noted that plaintiff's COPD is documented as being fairly well controlled, other than when she had complications from pneumonia, and

that she was generally observed to be in no acute distress.  *Id.*

The record as a whole is consistent with the ALJ's finding that plaintiff's COPD, although certainly severe as evidenced by pulmonary functioning testing, was generally not debilitating as long as she was not suffering from an exacerbation as a result of a respiratory infection. Additionally, although there are sporadic notations of lower back pain after February 2018, examinations revealed little more than some tenderness and pain with range of motion; notably, range of motion was noted to be full on multiple occasions and she had negative straight leg raising tests.  AT 312, 340.  Dr. Puri observed that plaintiff had a moderately decreased squat, decreased movement in the lumbar spine, full range of motion in the upper and lower extremities, and generally normal sensation and strength with bilateral knee tenderness and some slight weakness in her hands with gripping.  AT 326-27.  An x-ray of plaintiff's lumbar spine showed moderate disc space narrowing at the L3-L4 and L4-L5 levels.  AT 328.

The ALJ found the opinions of Dr. Puri and non-examining state agency medical consultant Dr. R. Mohanty to be somewhat persuasive, in that they are generally consistent with the record.  AT 22-23.  The ALJ found, however, that the record supports a greater degree of limitation, that Dr. Puri's opinion is somewhat vague in terms of specific functional

limitations, and that the nature of plaintiff's COPD and lumbar spine impairment as evidenced by the record are such that they "can be easily exacerbated" and therefore greater restrictions than those found in the above opinions are necessary "to avoid unnecessary flare-ups of her conditions."  AT 23.  This finding is consistent with the pulmonary functioning testing showing severe obstructive process with exertion and with plaintiff's reports that her COPD causes shortness of breath with exertion.  AT 338, 351.  Additionally, although the ALJ rejected portions of Dr. Coppens' treatment note from February 2014 as being based on plaintiff's unsubstantiated subjective reports, he does not appear to reject Dr. Coppens' ultimate conclusion that plaintiff is limited to sedentary work due to her COPD, and that opinion supports the ALJ's finding that plaintiff can perform a range of sedentary work with environmental restrictions as of her date last insured.  *Id.*

I therefore find that the opinion evidence in the record, along with the other evidence that the ALJ discussed and that is present in the record, provides a basis for both rejecting PA Sadal's opinion and finding that the RFC finding is supported by substantial evidence, and I recommend that plaintiff's arguments on this issue be rejected.

b.  Function-By-Function Assessment

Plaintiff next argues that the ALJ erred in failing to conduct a function-by-function assessment of plaintiff's limitations, and particularly in failing to define her specific capacity to sit throughout the workday.  Dkt. No. 16, at 24-25.

As to plaintiff's argument regarding the ALJ's failure to perform a function-by-function assessment related to her ability to sit, I note as an initial matter that the Second Circuit recognizes that there is no *per se* rule that the failure to perform such an analysis requires remand; rather, "the relevant inquiry is whether the ALJ applied the 'correct legal standards and whether . . . the determination is supported by substantial evidence.'"  *Merri C. v. Comm'r of Soc. Sec.*, 20-CV-0752, 2021 WL 3848479, at *3 (N.D.N.Y. Aug. 27, 2021) (Stewart, M.J.) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).  As such, the focus is on whether the RFC finding provides an adequate basis for meaningful judicial review, and whether the ALJ's failure to provide an explicit function-by-function analysis frustrates such meaningful review.  *Merri C.*, 2021 WL 3848479, at *3 (quoting *Cichocki*, 729 F.3d at 177).

Even if the ALJ could have expressed her findings more clearly by discussing the absence of evidence of limitations in plaintiff's ability to sit,

plaintiff has not shown how the record credibly supports that she requires greater limitations related to her ability to sit throughout the workday than are accounted for by the RFC. *See Brenden R. v. Comm'r of Soc. Sec.*, 20-CV-0821, 2021 WL 5965164, at *6 (N.D.N.Y. Dec. 15, 2021) (Hurd, J.) (noting that "[t]he burden is on plaintiff to show that the record evidence demands a more restrictive RFC"). Plaintiff's argument focuses on both her own subjective reports and the limitations outlined in PA Sadal's opinion. However, as was already discussed in detail above, the ALJ did not err in choosing to reject PA Sadal's opinion as being inconsistent with his own treatment of plaintiff and unsupported by the record evidence as a whole, and plaintiff has not challenged the ALJ's finding regarding her subjective reports. Plaintiff has therefore not met her burden to show that the ALJ's failure to perform a specific function-by-function analysis prevents meaningful review or resulted in an erroneous omission of greater limitations from the RFC determination.

Based on the foregoing, I recommend that plaintiff's arguments on this issue be rejected.

c.    Absences

Lastly, plaintiff argues that the ALJ should have included in the RFC finding a need for absences based on the evidence that plaintiff required

30

multiple multi-day hospitalizations as a result of exacerbations of her COPD that, had she been working, would have required a work-preclusive number of absences from work.  Dkt. No. 16, at 25-26.  In support of her argument, plaintiff points to testimony from the vocational expert indicating that employers will tolerate two unscheduled absences per month, arguing that this testimony shows that inclusion of a supported limitation related to the need for absences would have rendered her disabled.

Plaintiff's argument is unpersuasive based on the evidence related to the frequency of the relevant hospitalizations.  Plaintiff herself notes in her brief that the time she was recovering from pneumonia and concurrent exacerbations of COPD involved a two-week period in October 2013, an unspecified period in February 2014, and at least a week period in April 2016.  Dkt. No. 16, at 25-26.  A review of the medical evidence shows that plaintiff was admitted to the emergency room for pneumonia, acute exacerbation of COPD, or other acute respiratory infections in October 2010, April 2012, October 2015, and April 2016.  *See, e.g.*, AT 264, 291, 356, 377.  These admissions lasted anywhere from a few hours to a few days.  The fact that plaintiff infrequently experienced illness and exacerbations of her COPD requiring hospital-level care throughout the relevant period does not suggest that her COPD and associated respiratory

symptoms would cause her to regularly be absent from work more than two days per month.  The record shows that these exacerbations occurred typically not even once per year.  The RFC is intended to describe what a claimant is capable of doing on a consistent, sustained basis; the fact that plaintiff on occasion experiences acute respiratory illnesses that might cause her to miss work does not impact what her functional abilities, including her ability to attend a shift, are on a typical, continuing basis.  I note, moreover, that, by September 2018, it was noted that plaintiff was using oxygen as needed at night, was compliant with her COPD medications, and her COPD was well-controlled on those medications.  AT 398.

Plaintiff simply has not met her burden to show that the ALJ was required to include any limitation related to a need for absences in the RFC, much less a limitation for more than two absences per month.  I therefore recommend that plaintiff's argument on this issue be rejected.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial

evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED,

defendant's motion for judgment on the pleadings (Dkt. No. 21) be

GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 16) be

DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days

within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT

TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    February 3, 2022
          Syracuse, NY                      _____
                                            DAVID E. PEEBLES
                                            U.S. Magistrate Judge